## 16310

### ATLANTIC COAST LINE R. CO. v. WANNAMAKER CHEMICAL CO., INC.

#### (57 S. E. (2d) 311)

*Mr. T. B. Bryant, Jr.,* of Orangeburg, *for Appellant,* 

*Messrs. Douglas McKay,* of Columbia, *and Felder, Rosen & Horger,* of Orangeburg, *for Respondent,* 

January 17, 1950.

OXNER, Justice.

This action was brought by the Atlantic Coast Line Railroad Company against Wannamaker Chemical Company, Inc., to recover the transportation charges on a tank car which was delivered by the Cities Service Oil Company of Texarkana, Texas, to the Texas & Pacific Railway Company for shipment to Orangeburg, South Carolina. The car was consigned by the shipper to itself, care of the freight agent of the Atlantic Coast Line Railway at Orangeburg. After stating the foregoing facts, it is alleged in the complaint: "That on reaching Orangeburg, S. C., the agent of the plaintiff herein was directed by the consignor to deliver the same to the order of E. K. Jones, of Richmond, Virginia, or his representative, for disposition and to accept his further orders and instructions thereon; and that in compliance with said orders or directions the said car was delivered to the defendant herein at its siding in Orangeburg, S. C., and accepted by the defendant, but that the said defendant has failed and refuses to pay the freight charges thereon, which said freight charges amount to two hundred twelve and 99/100 ($212.99) dollars."

After entering a general denial except as to the formal allegations of the complaint, the defendant alleged:

"(3) Further answering the said complaint this defendant alleges that it bought from E. K. Jones the tank car described in * * * the complaint but before paying for the same the freight agent of the plaintiff advised and assured it that there was no freight charges due or owing on this car. Upon this assurance, which was in keeping with its purchase agreement, the defendant paid the said E. K. Jones for the said car which was sold to it by the said E. K. Jones delivered at Orangeburg.

"(4) Defendant denies that demand has been made on it for payment as alleged in the complaint and on the contrary alleges that not until more than nine months after it bought the said car did it ever hear of any claim on the part of the plaintiff for freight charges.

"(5) Defendant alleges that it was neither consignor or consignee of the shipment and there was no obligation, express or implied, upon it to pay freight charges."

This appeal is from an order granting a motion of the plaintiff to strike from the answer paragraphs 3, 4 and 5, above quoted, upon the ground that said allegations were irrelevant and did not constitute a defense to the cause of action set forth in the complaint.

Respondent contends that by accepting the car, appellant incurred liability for the full amount of all freight charges, known or unknown, which cannot be defeated by a plea of misrepresentation or estoppel. Appellant denies having assumed any liability for the payment of the transportation charges and further asserts that if any such liability exists, the facts stated in the answer are sufficient to estop respondent from enforcing it.

Under the terms of the Interstate Commerce Act, 49 U. S. C. A. § 1 *et seq.*, a carrier is required under penalty to collect the full amount of the freight charges in accordance with the rates fixed by the tariffs. In an action of this kind, the carrier is suing under the statute as a trustee for the protection of the public. *Great Northern Railway Co. v. Hyder,* D. C., 279 F. 783. An obligation to pay transportation charges is not merely a private one between the party liable and the carrier, but the duty to pay is a public one.

It is well settled that where error or misrepresentation is made by the carrier as to the tariff rate or the amount owing for transportation, there can be no estoppel if it subsequently develops that the proper amount was not collected. So that, if the carrier charges and receives only a part of the lawful tariff on a shipment, and the shipper or consignee pays the same in good faith, relying upon the statement of the carrier that the payment is in full, the carrier is not thereby estopped from collecting the full amount from any party legally liable therefor.

*Southern Railway Co. v. Herndon,* 175 S. C. 361, 179
S. E. 306; *Southern Railway Co. v. Calhoun Twine Mill,*
176 S. C. 538, 180 S. E. 557; *Pittsburgh, C. C. & St. Louis
Railway Co. v. Fink,* 250 U. S. 577, 40 S. Ct. 27, 63 L.
Ed. 1151. This is true even though the goods have been dis-
posed of before the claim for freight is made. *New York
Central & Hudson River Railway Co. v. York & Whitney
Co.,* 256 U. S. 406, 41 S. Ct. 509, 65 L. Ed. 1016. Estoppel
cannot become the means of successfully avoiding the re-
quirement of the Interstate Commerce Act as to equal rates.
*Pittsburg, etc., Railway Co. v. Fink, supra.*

Appellant apparently concedes the correctness of the fore-
going general principles but denies that they have any ap-
plication to the facts presented in the instant case. The ar-
gument is made that appellant was neither consignor nor
consignee of this shipment and did not either expressly or
impliedly agree to pay the transportation charges, but, on
the contrary, acquired title and received delivery of the ship-
ment upon the express understanding that all such charges
had been paid.

The general rule is that, if a consignee accepts a ship-
ment, he becomes liable as a matter of law for the
full amount of freight charges. *Louisville & Nashville
Railway Co. v. U. S.,* 267 U. S. 395, 45 S. Ct. 233, 69 L.
Ed. 678. In *Louisville & Nashville Railway Co. v. Central
Iron & Coal Co.,* 265 U. S. 59, 44 S. Ct. 441, 444, 68 L.
Ed. 900, the Court said that "if a shipment is accepted,
the consignee becomes liable, as a matter of law, for
the full amount of the freight charges, whether they are
demanded at the time of delivery, or not until later." In
*Southern Railway Co. v. Calhoun Twine Mill, supra,* the
Court stated [176 S. C. 538, 180 S. E. 559] : "The federal
law makes the consignee accepting a shipment liable for
the tariff charges." In the instant case appellant was neither
designated as consignor nor consignee. He purchased the
car from Jones on whose order the shipment was delivered
to and accepted by him. While there are a few cases hold-

ing that under these circumstances appellant would not be regarded as consignee, it is clear from our decisions that his position, so far as liability to the carrier for freight is concerned, is the same as if he had been designated in the contract of shipment as consignee. *Southern Railway Co. v. Collins,* 127 S. C. 219, 119 S. E. 883; *Southern Railway Co. v. Herndon, supra,* 175 S. C. 361, 179 S. E. 306.

The weight of authority is to the effect that there is little, if any, distinction in principle between collecting a charge less than that fixed by the tariffs and in not collecting any charge at all. It is said that although innocently done through error, the effect in both instances would be to violate the terms of the Interstate Commerce Act.

The conclusion of the Court below is not only in accord with our decisions but is supported by the overwhelming weight of authority in other jurisdictions: *Great Northern Railway Co. v. Hyder, supra; Western & Atlantic Railroad Co. et. al. v. Underwood,* D. C., 281 F. 891; *Central Warehouse Co. v. Chicago, R. I. & P. Railway Co.,* 8 Cir., 20 F. (2d) 828; *New York, N. H. & H. R. Co. v. Lord & Spencer, Inc.,* 273 Mass. 583, 174 N. E. 179; *Norfolk & W. Railway Co. v. Williamson Grocery Co.,* 103 W. Va. 532, 138 S. E. 102; *Atlantic Coast Line Railway Co. v. West Paving Co. et al.,* 228 N. C. 94, 44 S. E. (2d) 523.

Appellant principally relies on *Cincinnati Northern Railway Company v. Beveridge et al.,* D. C., 8 F. (2d) 372, 373. In that case a carload of hay was delivered at Cincinnati, Ohio, for shipment to Richmond, Virginia, consigned to the shipper's own order. The carrier issued to the shipper, who was on its credit list, a prepaid bill of lading. The shipper then drew a draft, to which was attached a copy of the prepaid bill of lading, on one Hawkins, a commission merchant at Richmond, with instructions to handle the hay for its account. Hawkins sold the hay to Beveridge & Company, paid the draft from the proceeds of sale, and turned

the bill of lading over to the railroad company, together with an order authorizing delivery to Beveridge & Company. The railroad company thereupon delivered the hay to the purchaser. Subsequently the shipper gave to the carrier a check for the amount of the freight charges, which was returned unpaid on account of insufficient funds. Suit for the unpaid freight was brought against Hawkins and Beveridge & Company. The Court held that the defendants were not liable upon two grounds: (1) That under the agreement with the carrier the shipper was to pay the freight and that no obligation was imposed upon the purchaser of the goods at destination who, relying upon the railroad's representation that the freight had been paid, accepted the shipment. It was said that to hold the purchaser liable "would be to make a contract for him which he himself had not made." (2) That there was no showing that the carrier was unable to collect the freight charges from the shipper.

The *Beveridge case* seems to represent a minority view and has not been generally followed. The first ground upon which defendants were relieved of liability was bottomed upon the Court's conclusion that neither of the defendants could be held liable as a consignee of the shipment. This conclusion is contrary to our own decisions previously adverted to. There is also a fundamental factual distinction between that case and the instant one. There the carrier expressly agreed to look to the shipper for the payment of the transportation charges. Here there is no showing in appellant's answer that there was a contract with the carrier to the effect that the shipper was to be responsible for the freight charges. It is true that appellant alleges that he was not to be responsible for such charges under the contract he made with Jones, but there is no allegation that the carrier was a party to this agreement. As stated by the North Carolina Supreme Court in *Atlantic Coast Line Railway Co. v. West Paving Co. et al., supra*: "While the tariffs do not prescribe who shall pay the freight charges and while the parties to the shipment, the consignor and consignee, are free to stip-

ulate as between themselves who shall pay, an agreement between them may not be held to prevent the carrier from collecting the full amount according to the rate fixed from and party legally liable therefor." [228 N. C. 94, 44 S. E. (2d) 526.]

■ This case presents another instance of individual hardship caused by the policy of the Government as expressed in the Interstate Commerce Act, but we are bound by the terms of this Act and the decisions of the United States Supreme Court construing same. If the allegations of the answer are true, appellant's remedy is in an action against the seller.

The order appealed from is affirmed.

BAKER, CJ., and FISHBURNE, STUKES and TAYLOR, JJ., concur.